**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **ERICK RUIZ LOPEZ,** | )( | **Civil Action No.** |
| | )( | **(Jury Trial)** |
| *Plaintiff,* | )( | |
| | )( | |
| **V.** | )( | |
| | )( | |
| **CITY OF HOUSTON, TEXAS, and** | )( | |
| **DOE HPD OFFICERS,** *Individually,* | )( | |
| | )( | |
| *Defendants.* | )( | |

<u>**PLAINTIFF'S ORIGINAL COMPLAINT and REQUEST FOR CLASS ACTION**</u>

**TO THE HONORABLE JUDGE OF THE COURT:**

COMES NOW Plaintiff **ERICK RUIZ LOPEZ** complaining of the Defendants **CITY OF HOUSTON** and **DOE POLICE OFFICERS,** *Individually*, and requests class action status and declaratory and injunctive relief and will show the following:

## I.　　INITIAL FACTS

1. This is a civil rights case brought under 42 U.S.C. §§1983 for violations of Houston resident Erick Ruiz Lopez's ("Eric") rights under the Fourth and Fourteenth Amendments and state law tort.

2. June 27, 2026, Houston Police Department ("HPD") officers stopped Eric on a traffic violation about 10 PM. When asked for his driver's license Erick produced his Honduran identification card.

1

3.      Erick has no criminal convictions or warrants nor was he a suspect in any crime.

4.      Erick usually worked tiling and doing other home floor work. He supported his girlfriend and her children.

5.      HPD officers searched Eric's car for contraband without probable cause and found no contraband. They had his vehicle towed.

6.      HPD officers notified the United States Immigration and Customs Enforcement ("ICE") that they had stopped a Honduran citizen.

7.      Despite a reasonable amount of time having passed to complete all reasons for the stop HPD officers held Erick for at least two hours until ICE arrived and then ICE took Erick to an ICE detention facility in Montgomery County, Texas. Erick was deported to Honduras June 27, 2026.

## II.      JURISDICTION AND VENUE

8.      Jurisdiction is proper in this Court pursuant to 28 U.S.C. §§1331 and 1343. This Court has supplemental jurisdiction as to Plaintiffs' state law claims, if any, pursuant to 28 U.S.C. §1367(a).

9.      Venue is proper in this Court pursuant to 28 U.S.C. §1391 because the City of Houston is located, and the events giving rise to Plaintiffs' claims occurred, within the U.S. Southern District of Texas, Houston Division.

### III.  <u>PARTIES</u>

10.    Plaintiff ERICK RUIZ LOPEZ for all times relevant to this complaint was a resident of Houston, Texas.

11.    Defendant CITY OF HOUSTON is a municipality located mainly in Harris County, Texas and can be served with process by serving the City Secretary at 901 Bagby, Houston, Texas 77002.

12.    Defendant DOE HPD OFFICERS are individuals and can be served with process wherever they are found.

### <u>ADDITIONAL FACTS</u>

13.    Early 2025 the federal government put over 700,000 ICE administrative "warrants" into the nationwide NCIC computer system which all United States law enforcement has access and which they use to check people for actual criminal warrants. Most administrative ICE "warrants" do not involve any crime but indicate a potential immigration litigation shortcoming. These "warrants" are not issued by a judge nor the result of an adversarial process.

14.    HPD started holding immigrants for ICE at least by January 2025.

15.    Late 2025, Houston police chief Noe Diaz announced publicly that HPD had been holding immigrants at traffic stops, investigations, and calls for service for ICE if they had an ICE administrative warrant. Chief Diaz stated many people were held by HPD until ICE was contacted and 17 people were moved to meet an ICE agent at a nearby location where they were taken into ICE custody.

3

16.     In early 2026 there was much debate in Houston, Texas about whether it was Constitutional for HPD officers to hold immigrants including undocumented immigrants, who had no outstanding warrants for arrests, at traffic stops and other encounters and then notify ICE and then wait for ICE to arrive to take custody of the immigrant.

17.     At several Houston City council meetings members of the public, including at least one lawyer, spoke to the Mayor, who is a lawyer, City Councilmembers, several who are lawyers, and the City Attorney, who, of course, is a lawyer, that it was Unconstitutional to hold immigrants who had no warrants at traffic stops and other encounters for ICE once the reason for the police contact was over or enough time had passed to finish the activities related to the reason for the stop or encounter. Several mentioned that such actions violated the Fourth Amendment citing the United States Supreme Court case of *Rodriguez v. United States, 575 U.S. 348 (2015)*.

18.     Eventually the City voted in March 2026 ordering law enforcement to wait no more than 30 minutes after notifying ICE from the scene. It was unclear when the 30-minute time limit started.

19.     April 2026 the City approved a new ordinance to stop the 30-minute wait time and let people go after the police acts related to the reason for the encounter were over. The ordinance also required a quarterly report of ICE/HPD coordination related to immigrant detentions.

20.      Texas Governor Abbott, who is a lawyer, then threatened to withdraw $110 million in public safety grants to Houston stating that the ordinance materially limited ICE immigration enforcement. As a result The City of Houston then revised the ordinance to

4

allow HPD officers to hold immigrants for ICE without a designated time limit and also required a quarterly report from HPD regarding all HPD encounters with individuals which also involved ICE.

21.    The first quarterly report ending June 30, 2026, showed 59 immigrants were held for an average of 39 minutes and released at the scene. Also, 19 immigrants were transferred to ICE custody.

22.    A sample of ICE immigration related HPD encounters include: *72 minutes,* April 15, 2026, at 3:18 a.m. HPD officers spent over an hour on a Southwest Freeway stop described as "immigration inquiry." The motorist was issued a ticket: *57 minutes*, April 17, 2026, at 11:30 p.m., a traffic stop in Gulfton lasted nearly an hour after officers called ICE; *93 minutes,* April 17, 2026, at 11:48 p.m., HPD officers spent over an hour and a half on a stop in Acres Homes involving immigration agents; *53 minutes*, April 20, 2026, at 12:36 a.m., a stop in Westchase where officers called ICE lasted nearly an hour and resulted in a warning; 32 minutes, April 21, 2026, at 3:47 p.m., HPD officers spent about half an hour on the scene of a traffic stop in Upper Kirby involving immigration agents; *168 minutes,* Aug. 1, 2025, at 9:50 p.m., HPD officers pulled over Mr. Padilla for running a red light, then they called ICE and drove him five miles away to meet an ICE agent.

23.    One sampling of "non-immigration ICE" related stops showed an average of 19 minutes per traffic stop by HPD officers. Plaintiff contends even a 19 minute average is much longer than necessary for the average traffic stop or other police encounter.

24.    As of the filing of this lawsuit HPD officers are still holding immigrants and others at traffic stops and other HPD encounters for ICE.

5

# CAUSES OF ACTION[1]

25.    Plaintiff incorporates all previous paragraphs as if set forth herein.

26.    Defendants' actions sound in the state torts of assault and battery and false imprisonment as well as federal law 42 U.S.C. Section 1983 as a violation of the Fourth, Fifth, and Fourteenth Amendments constituting unlawful detention, false arrest, unreasonable search of person and vehicle, as well as due process violations.

27.    Pursuant to 42 U.S.C §1983, every person who, under color of any statute, ordinance, regulation, custom, or usage of any State, subjects, or causes to be subjected, any citizen of the United States to the deprivation of any rights secured by the Constitution and laws, shall be liable to the injured party in action for redress.

28.    Each Defendant, jointly, severally, or both, deprived Erick of his rights under the Fourth Amendment as incorporated and applied to the states through the Fourteenth Amendment and the Fifth Amendment.

29.    The acts and omissions of each Defendant were a proximate cause and cause-in-fact of Erick's injuries and damages.

---

[1] By listing causes of action Plaintiff does not assert they are the only causes of action and if the facts set forth a prima facie case for additional causes of action Plaintiff includes such actions.

## 42 U.S.C. §1983 – MUNICIPAL LIABILITY – POLICY, CUSTOM OR PRACTICE

30.     Plaintiff incorporates all previous paragraphs as if set forth herein.

31.     Municipalities may be held liable under 42 U.S.C. §1983 for constitutional deprivations committed pursuant to a policy, custom, or practice of the municipality. Even absent an officially adopted policy, a custom or practice that is so persistent and widespread that it fairly represents a municipal policy will support liability against the municipality. A pattern of unconstitutional conduct may be shown on the part of municipal employees who are not policymakers.

32.     The City of Houston at all times relevant to this complaint has maintained policies, customs or practices that caused and were the moving force behind the violation of Erick's constitutional rights described in this Complaint. The acts and omissions of each individually named Defendant were caused by said policies, customs or practices.

33.     The City of Houston's policymakers such as their Mayor John Whitmire, City Council, Police Chief Noe Diaz, and other HPD management had actual or constructive knowledge about said policies, customs or practices. The City of Houston's policymakers were deliberately indifferent as to said policies, customs or practices.

34.     Said policies, customs and practices include the following:

a.     The City's policy or custom of allowing its officers to hold individuals at traffic stops and other encounters with ICE administrative warrants for ICE;

b.     The City's policy or custom of failure of supervisors or others to supervise its officers which hold individuals with ICE administrative Warrants for ICE thereby causing detentions that exceed the parameters of the Constitution.

c.     The City's policy or custom of failure to discipline its officers which hold individuals with ICE administrative Warrants for ICE thereby causing detentions that exceed the parameters of the Constitution.

d.     Current and former Section 34-41 of the Houston Code of Ordinances which allows its officers to hold individuals with ICE administrative warrants for ICE thereby causing detentions the exceed the parameters of the Constitution.

e.     A pattern and practice of HPD officers to holding individuals with ICE administrative Warrants for ICE thereby causing detentions that exceed the parameters of the Constitution.

## RATIFICATION

35.     Despite policymakers being aware of many violations similar to Erick's there has been a failure to discipline or retrain thereby ratifying the behavior

## CLASS ACTION

36.     This case is ripe for class action as Erick is an appropriate class member and qualifies as a class representative under Federal Rule of Procedure 23.

37.      Furthermore, the class is so numerous, and growing, making joinder impracticable as it includes any person held by HPD for ICE longer than the time to complete the mission

of the original HPD stop or other encounter. The starting point is two years prior to the date of filing the instant lawsuit and as evidenced by Houston's own first quarterly report of ICE-involved HPD encounters is approximately 78 potential members and Plaintiff predicts discovery will find more than 78 for that period. Even considering the 78 to be an average that would be at least 400 potential class members and growing.

38.   There are common questions of law or fact to the class which is whether or not were the class members held longer than permitted by *Rodriguez v. United States (575 U.S. 348 (2015))* and, therefore, violating the Fourth Amendments dictates against Unreasonable Searches and Seizure and 42 U.S.C. Section 1983 and state law. The claims of Erick as a representative party are typical of the claims or defenses of the class; and Erick as a representative party will fairly and adequately protect the interests of the class. Prosecuting separate actions by or against individual class members would create a risk of: (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests. Additionally. the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

Also, the class members' interests in individually controlling the prosecution or defense of separate actions and the extent and nature of any litigation concerning the controversy already begun by or against class members weighs in favor of class action as does the desirability of concentrating the litigation of the claims in the U.S. Southern District of Texas and the likely difficulties in managing a class action are small to modest.

## DAMAGES

39.    Plaintiff incorporates all preceding paragraphs by reference herein.

40.    Plaintiff has suffered at least:

a.    Pecuniary loss sustained in the past, including lost wages and opportunity, and attorney's and other fees related to the criminal prosecutions

b.    Pecuniary loss that, in reasonable probability, will be sustained in the future.

c.    Mental anguish sustained in the past,

d.    Mental anguish that, in reasonable probability, will be sustained in the future.

e.    Loss of consortium and enjoyment of life,

f.    Attorney's fees and expenses.

g.    Exemplary damages against each individually named Defendant. Plaintiff is entitled to exemplary damages because the individual Defendants' actions were motivated by malice and/or involved reckless or callous indifference to Erick's federally protected rights and under state law. The individually named Defendants engaged in these actions and omissions intentionally, willfully, and/or wantonly, demonstrating deliberate indifference to, and a reckless disregard for, Erick's constitutionally protected rights and under state law.

10

h.      Pursuant to 42 U.S.C. §1988, Plaintiff seeks and are entitled to recover attorney's fees and costs, including expert fees.

## JURY DEMAND

41.     Plaintiff hereby demands a trial by jury.

## PRAYER

42.     WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully pray that all Defendants be cited to appear and answer herein, and that Plaintiff have judgment against Defendants, jointly and severally, for actual damages, exemplary damages against all individual Defendants, pre- and post-judgment interest, attorney's fees and costs of court, including expert fees, and all further relief, both legal and equitable, injunctive relief and declaratory relief in the form of ending all HPD stops and encounters involving ICE that cause detentions beyond those allowed by the Constitution, to certify a class and any other relief to which Plaintiff show themselves justly entitled.

Respectfully Submitted,

/s/ *Randall L. Kallinen*
Randall L. Kallinen
KALLINEN LAW PLLC
State Bar of Texas No. 00790995
U.S. So. Dist. of Texas Bar No. 19417
511 Broadway Street
Houston, Texas 77012
Telephone:    713/320-3785
FAX:             713/893-6737
E-mail:         AttorneyKallinen@aol.com

11

Alexander C. Johnson
KALLINEN LAW PLLC
State of Texas Bar No. 24123583
U.S. So. Dist. of Texas Bar No.: 3679181
511 Broadway Street
Houston, Texas 77012
Telephone:    573/340-3316
Fax:          713/893-6737
Email:        alex@acj.legal

ATTORNEYS FOR PLAINTIFF